UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| RICHARD KRAMER, | : | |
| Plaintiff, | : | |
| | : | CIVIL CASE NO.: 3:11-cv-01424-SRU |
| v. | : | |
| | : | |
| TRANS-LUX CORPORATION and | : | |
| JEAN MARC ALLAIN, | : | |
| Defendants. | : | NOVEMBER 10, 2011 |
| | : | |

**DEFENDANT TRANS-LUX CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNT II OF THE COMPLAINT, TO STRIKE PLAINTIFF'S DEMAND FOR A JURY TRIAL WITH RESPECT TO COUNT I AND TO STRIKE PLAINTIFF'S PRAYER FOR RELIEF TO THE EXTENT THAT IT SEEKS DAMAGES IN EXCESS OF THOSE PERMITTED BY ERISA AND THE DFA**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7(a)1 of the District of Connecticut Local Rules of Civil Procedure, Defendant Trans-Lux Corporation ("Trans-Lux" or "the Company"), by and through its undersigned counsel, hereby submits this memorandum of law in support of its motion to dismiss Count II of the Complaint filed by Plaintiff Richard Kramer ("Plaintiff"), to strike Plaintiff's demand for a jury trial with respect to Count I, and to strike Plaintiff's Prayer for Relief to the extent that it seeks damages in excess of those permitted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), 15 U.S.C. § 78u-6(h)(1)(C). In his Complaint, Plaintiff alleges that Defendants Trans-Lux and Jean Marc Allain ("Mr. Allain") (collectively, "Defendants") retaliated against him and terminated his employment in violation of Section 510 of ERISA, 29 U.S.C. § 1140, and the DFA, 15 U.S.C. § 78u-6 for informing management, Trans-Lux's Audit Committee and the

United States Securities and Exchange Commission ("SEC") of Trans-Lux's alleged failure to amend the Retirement Pension Plan For Employees Of Trans-Lux Corporation And Certain Of Its Subsidiaries And/Or Affiliates (the "Pension Plan" or "Plan") in accordance with Pension Plan procedures or to file a Plan amendment with the SEC. (Compl., ¶¶ 26-28, 38-42, 45-49.) This Court should dismiss Count II of Plaintiff's Complaint because it fails to state a plausible claim for relief under the DFA. This Court should also strike, with prejudice, Plaintiff's demand for relief to the extent that he seeks compensatory and punitive damages or any other relief in excess of the relief provided by ERISA and the DFA. Finally, this Court should strike Plaintiff's demand for a jury trial with respect to Count I, because there is no right to a jury trial under ERISA.

## I.   STATEMENT OF FACTS[1]

Plaintiff's facts fail to support whistleblower status or protected activity under the DFA. Plaintiff was employed as Trans-Lux's Vice President of Human Resources and Administration. (Compl., ¶ 9.) In that position, Plaintiff was responsible for managing Trans-Lux's relationship with the Pension Benefits Guaranty Corporation's ("PBGC") oversight of Trans-Lux's ERISA-governed Pension Plan, ensuring company compliance with all federal and state laws and regulations, serving as plan sponsor/administrator on all benefit plans, and serving as fiduciary for Trans-Lux's Defined Benefit and Defined Contribution plans. (Id. ¶ 10.) He was not responsible for filing corporate disclosures, such as Form 10Ks or 10Qs, with the SEC.

The Pension Plan provides that "[t]he general administration of the Plan shall be placed in a Pension Committee consisting of not less than three nor more than nine persons who

---

[1] These facts are taken as alleged in the Complaint and are accepted as true for purposes of this motion only, and from documents central to, and referenced by, the Complaint.

shall be appointed, from time to time, by the Board to serve at the pleasure of said Board."[2]
(Exhibit A, at p.54.) Plaintiff served as a member of Trans-Lux's Pension Plan Committee ("the
Committee"), along with Plaintiff's supervisor, Angela Toppi ("Ms. Toppi"), Trans-Lux's Chief
Financial Officer. No other members served on the Committee between the middle of 2008 and
June 21, 2011. (Compl. ¶¶ 11, 13.)

       Plaintiff claims he engaged in protected activity by notifying management about
certain Plan compliance issues verbally and by email and sending a letter about some of these
same issues to the SEC. Specifically, on a number of occasions beginning in the middle of 2008
and continuing through his termination, Plaintiff told Ms. Toppi that Trans-Lux's Pension Plan
documents require the Committee to be composed of a minimum of three members and
suggested that other employees join the Committee. (Id. ¶ 14.) Plaintiff also suggested that
Trans-Lux find an outside trustee to avoid the appearance of a conflict of interest that might be
created by Ms. Toppi's receipt of compensation for her work as the sole trustee of the Pension
Plan. (Id. ¶ 16.) Plaintiff further claims that, despite his expressed concerns, "Ms. Toppi
continued to move forward with amendments to the Pension Plan, as well as all other Pension
Plan decisions, with only two members." (Id. ¶ 17.)

       On or about March 22, 2011, Plaintiff allegedly sent an email to internal
management employees regarding various Plan compliance issues. (Id. ¶ 22.) Specifically,
Plaintiff emailed Mr. Allain, Trans-Lux's Chief Executive Officer, Ms. Toppi and Drew Aldrich

---

[2] A complete copy of the Pension Plan is attached hereto as Exhibit A. The Complaint
specifically references the Pension Plan at paragraphs 10, 13-20, 22-23, 25-27, 38-39, 41-42, 45-
46 and 48-49. Under the federal rules, it is widely recognized that when a plaintiff references,
but does not attach, certain documents in the complaint that are central to the plaintiff's claim,
the Court may consider the documents for purposes of a Rule 12(b)(6) motion to dismiss without
conversion to summary judgment under Rule 56. Cortec Industries v. Sun Holding, 949 F. 2d 42,
48 (2d Cir. 1991).

regarding the following three issues: (1) that the trustee's payment by the Company created a potential conflict of interest as she had inside knowledge of the Company's financial situation and continued to hold the bonds as pension investment while they lost nearly all their value[3]; (2) that the Committee had been comprised of only two members; and (3) that the 2009 amendment to the Pension Plan, freezing salary, had never been presented to the Board of Directors or filed with the SEC ("the 2009 Amendment"). (Id. ¶¶ 12, 23.) On or about May 16, 2011, Plaintiff sent another email to Trans-Lux's Board of Director's Audit Committee regarding the conflict of interest issue, the make-up of the Committee and Trans-Lux's alleged failure to present the 2009 Amendment "to the appropriate bodies." (Id. ¶ 26.) The only communication Plaintiff had with the SEC was a letter he sent to the SEC in mid-May 2011, stating that Trans-Lux had not submitted the 2009 Amendment to its Board of Directors for approval and had not filed its amendment with the SEC. (Id. ¶ 27.) He did not submit a Form TCR to the SEC as required by the SEC's Final Rules implementing the DFA.

Plaintiff's employment was terminated effective July 22, 2011, along with the entire Human Resources department. (Id. ¶¶ 35-36.)

---

[3] In deciding a motion to dismiss under Rule 12(b)(6), the District Court may consider matters of which judicial notice may be taken. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A court may take judicial notice of matters of public record, such as public court filings. See, e.g., Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In another action Plaintiff filed based on virtually the same facts in the Connecticut Superior Court for the Judicial District of Norwalk at Stamford captioned Richard Kramer v. Trans-Lux Corporation, No. FST-CV-11-6011368-S, which Defendants removed to federal court, Docket No 2:11-cv-01595 (CFD), Plaintiff described this first issue as follows: "the substantial loss of value of the Trans-Lux bonds in 2010, which would cause the Pension Plan to be even more underfunded than previously believed, would require additional substantial capital contributions by Trans-Lux, and would expose it to liability with the Pension Benefit Guaranty Corporation, which could then begin seizing company assets." His actual communication, which differs from both of these iterations, is discussed infra pp. 13-15.

## II.   ARGUMENT

### A.   The Standard For A Motion To Dismiss

Count II of the Complaint fails on its face to state a plausible claim for relief under the DFA. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the pleading standard "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Dyson v. New York Health Care, Inc., 353 Fed. Appx. 502, 503 (2d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949-50).

> The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

Logan v. Sectek, 632 F. Supp. 2d 179, 182 (D. Conn. 2009) (quoting Iqbal, 129 S. Ct. at 1949-50).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the "tenet that a court must accept as true all of the allegations contained in a complaint" does not apply to legal conclusions. Logan, 632 F. Supp.

2d at 182 (quoting Iqbal, 129 S. Ct. at 1949-50). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (citations omitted).

Determining whether a complaint sets forth a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . ." Logan, 632 F. Supp. 2d at 182 (quoting Iqbal, S. Ct. at 1949-50). To assess a motion to dismiss, "the Court should follow a 'two-pronged approach' to evaluate the sufficiency of the complaint." Aiello v. Stamford Hosp., Inc., 2010 U.S. Dist. LEXIS 103032, at *5 (D. Conn. Sept. 29, 2010)[4] (citing Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010)). First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). Second, "a court should determine whether the [remaining] 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1950).

B.    **This Court Should Dismiss Count II Of Plaintiff's Complaint Because It Fails On Its Face To State A Plausible Claim For Relief Under The DFA.**

Plaintiff's Complaint fails to state a plausible claim for relief under the DFA, because, even if all of the facts stated in Plaintiff's Complaint are accepted as true, he cannot show that he was a "whistleblower," as that term is defined by the DFA, or that he made protected "disclosures" to the SEC. Here, Plaintiff alleges that Defendants subjected him to heightened scrutiny and retaliation from senior management and terminated his employment because he informed internal management, Trans-Lux's Audit Committee and the SEC regarding

---

4 Copies of decisions not included in an official reporter are attached hereto as Exhibit B.

Trans-Lux's alleged Plan compliance issues. (Compl. ¶¶ 17-19, 22-23, 26-27, 46, 48, 49.) Plaintiff is not a "whistleblower" as that term is defined by the DFA, because he did not provide any information to the SEC in the manner established by the SEC relating to a violation of the securities laws. Nor did Plaintiff make any "disclosures" to the SEC that are required or protected by SOX, the Exchange Act or 18 U.S.C. § 1513(e). The whistleblower retaliation provisions of the DFA simply do not apply to the type of communications Plaintiff alleges in his Complaint.

      1.     **Plaintiff Is Not A "Whistleblower" Under The DFA, Because He Did Not Provide Any Information Relating To A Violation Of The Securities Laws To The SEC In A Manner Established By The SEC.**

The DFA does not protect individuals, like Plaintiff, who provide information internally; it only protects individuals who provide **protected information to the SEC in a manner established by the SEC**. 15 U.S.C. § 78u-6(a)(6).

      a.     **Plaintiff did not engage in protected activity when he sent emails to internal management and the Audit Committee, because the DFA only protects individuals who provide information to the SEC.**

Internal emails, like the ones Plaintiff sent here, do not constitute protected activity under the DFA. To the contrary, the anti-retaliation provisions of the DFA explicitly prohibit retaliation against individuals who provide information "**to the Commission**." 15 U.S.C. § 78u-6(a)(6) (emphasis added). In statutory construction cases, "the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (internal quotation marks and citation omitted). Where the statute's language is "plain, 'the sole function of the courts is to enforce it according to its terms.'"

United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S. Ct. 1026 (1989) (citation omitted). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146 (1992) (citation omitted). The plain language of the DFA requires that a whistleblower provide information to the SEC in order to invoke its anti-retaliation provisions.[5] Under the unambiguous language of the statute, internal communications are not protected by the DFA. See Ron Pair Enters., Inc., 489 U.S. at 241 (holding that the statutory language "expresses Congress' intent … with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary"); Germain, 503 U.S. at 253-54 (holding that 28 U.S.C. § 158(d), which deals with bankruptcy jurisdiction, does not limit the courts of appeals' jurisdiction over "[i]nterlocutory orders of the district courts of the United States" under 28 U.S.C. § 1292, where § 1292 provides for review in the courts of appeals, in certain circumstances, of interlocutory orders and § 158(d) is silent on the issue).

Furthermore, other provisions of the DFA show that Congress was perfectly capable of extending whistleblower protection to persons other than those reporting to a particular federal agency. The DFA enacts separate whistleblower anti-retaliation provisions under the purview of the newly-created Bureau of Consumer Financial Protection, protecting persons providing disclosures "to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency" of violations of law or regulations under the Bureau's jurisdiction. 12 U.S.C. § 5567(a)(1). The absence of similarly broad protections for

---

[5]This is an issue of first impression in this court. Only one federal district court has ever addressed this issue, see discussion infra p.11-12, and it has not been addressed by the Second Circuit Court of Appeals.

whistleblowers alleging securities law violations in Section 922 indicates that Congress intended to require whistleblowers reporting such violations to report them to the SEC. <u>Keene Corp. v. United States</u>, 508 U.S. 200, 208, 113 S. Ct. 2035 (1993) ("'[W]here Congress includes particular language in one section of a statute but omits it in another …, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (citation omitted))

The SEC Final Rules and the only federal district court decision finding to the contrary simply misconstrue the DFA. The SEC, in its final regulations adopted on May 25, 2011, took the position that a whistleblower need not provide information to the SEC to be protected under the DFA's anti-retaliation provisions. Instead, under the agency's interpretation, an individual is a whistleblower if he or she provides protected information in a manner described in section 21F(h)(1)(A), that is, if the individual either provides the information to the SEC or in a disclosure otherwise required or protected under the statutes listed in the DFA or any other law, rule, or regulation subject to the SEC's jurisdiction. 17 C.F.R. § 240.21-F-2(b)(ii). In its comments to the Final Rules, the SEC stated in relevant part, as follows:

> This change to the rule reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities other than the Commission. Specifically, Section 21F(h)(1)(A)(iii)—which incorporate [sic] the anti-retaliation protections specified in Section 806 of the Sarbanes Oxley Act, 18 U.S.C. 1514A(a)(1)(C)—provides anti-retaliation protections for employees of public companies … when these employees report to (i) a federal regulatory or law enforcement agency, (ii) any member of Congress or committee of Congress, or (iii) a person with supervisory authority over the employee or such other person working for the employer who has authority to investigate, discover, or terminate misconduct.

Implementation of the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, at 17-18. The SEC simply misconstrued the statute.

9

As a preliminary matter, this Court need not defer to the SEC's interpretation of the DFA's definition of "whistleblower" because it unambiguously requires that an individual provide information to the SEC. See supra pp.7-9. "The judiciary is the final authority on issues of statutory construction, and must reject administrative constructions which are contrary to clear congressional intent." Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843 n.9, 104 S. Ct. 2778 (1984).

Furthermore, the SEC's interpretation of the term "whistleblower" to include internal complaints is an impermissible construction of the statute. The SEC's interpretation of the term "whistleblower" reads the phrase "to the Commission" out of the definition of "whistleblower" altogether in contravention of the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441 (2001) (internal quotation marks and citation omitted). Moreover, it cannot have been Congress' intent to protect internal complaints of retaliation under the DFA; otherwise SOX would be rendered obsolete. See United States v. Fausto, 484 U.S. 439, 453, 108 S. Ct. 668 (1988) ("[It] can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change."), superseded by statute on other grounds. If all SOX-protected activity were to fall within the scope of the DFA's whistleblower provisions, regardless of whether the employee provided information to the SEC, then all SOX claimants would arguably be able to file a whistleblower retaliation claim under the DFA instead of SOX. Their incentive to do so would be great. The DFA has an expansive six- to ten-year statute of limitations (as opposed to SOX's 180-day statute of limitations), a direct right of action in federal district court (as opposed to having to exhaust administrative remedies before OSHA),

and double back-pay damages (double the monetary damages provided by SOX). 15 U.S.C. § 78u-6(h)(1)(B),(C). Thus, based on this interpretation of the DFA, plaintiffs would be able to opt to pursue SOX claims under the more employee-favorable provisions of the DFA, including claims that might otherwise be time-barred under SOX, instead of under OSHA's administrative scheme. Such a shift in strategy could also greatly diminish OSHA's role in investigating and adjudicating SOX cases going forward. The comments to the SEC's Final Rules under the DFA did not address these implications with respect to the existing SOX statutory scheme. In the Summary of Statutory Changes to the Sarbanes-Oxley Whistleblower Provision that the SEC provided with its proposed Interim Final Rule under SOX, however, the SEC indicated that the DFA did nothing to change the SOX whistleblower provision, except to add protection for employees from retaliation by nationally recognized statistical rating organizations, to extend the statutory filing period from 90 to 180 days, to add the right to a jury trial, to prohibit waiver by agreement of SOX rights and remedies, and to expand the scope of entities that are subject to SOX's whistleblower provision. Summary of Statutory Changes to the Sarbanes-Oxley Whistleblower Provision at 4-6. "[The DFA] left the remaining requirements of the [SOX] whistleblower provision unchanged." Id. at 6.

The interpretation of the term "whistleblower" reached by the only district court to have interpreted the scope of the DFA's whistleblower anti-retaliation protections is similarly impermissible. In Egan v. TradingScreen, Inc., 2011 U.S. Dist. LEXIS 47713 (S.D.N.Y. May 4, 2011), the plaintiff claimed that his employment was terminated after he informed the company's president that its CEO was diverting the company's corporate assets to another company solely owned by the CEO. The court agreed with the defendants that, by its plain terms, the DFA's anti-retaliation provision prohibits retaliation against whistleblowers who provide information to the

11

SEC, and that if Congress wanted to extend whistleblower protections to individuals beyond those who report to the SEC, it would have explicitly done so. Id. at *10, 12. The court should have ended its inquiry there. See, e.g., Germain, 503 U.S. at 253-54. Instead, it looked at section 78u-6(h)(1)(A) and noted that, in addition to protecting lawful acts done by the whistleblower to provide information or testimony to the SEC, subsection 78u-6(h)(1)(A)(iii) protects whistleblower disclosures that are required or protected under: (1) SOX; (2) the Exchange Act; (3) 18 U.S.C. § 1513(e); and (4) any other law, rule, or regulation subject to the jurisdiction of the Commission. The court found that this language created a contradiction in the statute, as "a literal reading of the definition of the term 'whistleblower' in *15 U.S.C. § 78u-6(a)(6)*, requiring reporting to the SEC, would effectively invalidate *§ 78u-6(h)(1)(A)(iii)*'s protection of whistleblower disclosures that do not require reporting to the SEC." Id. at *11 (emphasis in original). The court then determined that "the contradictory provisions of the [DFA] are best harmonized by reading *15 U.S.C. § 78u-6(h)(1)(A)(iii)*'s protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to *15 U.S.C. § 78u-6(a)(6)*'s definition of a whistleblower as one who reports to the SEC." Id. at *13 (emphasis in original). As discussed supra pp. 9-11, the Egan court's interpretation of the DFA is impermissible, because it both reads the phrase "to the Commission" out of the DFA's definition of whistleblower and renders SOX obsolete.

      **b.    None of Plaintiff's internal or external communications constituted protected activity, because they did not relate to a violation of the securities laws.**

The DFA does not protect individuals, like Plaintiff, who provide information to the SEC regarding ERISA plan compliance issues; it only protects individuals who provide information to the SEC **relating to a violation of the securities laws**. 15 U.S.C. § 78u-

6(a)(6). Here, Plaintiff claims that he provided information to internal management and Trans-Lux's Audit Committee regarding various alleged Plan compliance issues. (Compl. ¶¶ 14, 16-17, 22-23, 26.) He further claims that he sent a letter to the SEC regarding Trans-Lux's alleged failure to submit the 2009 Amendment to its Board of Directors for approval or to file that amendment with the SEC. (Id. ¶ 27.) Nowhere in any of these communications, however, did Plaintiff ever mention that Trans-Lux's alleged conduct violated the securities laws. Plaintiff's email to internal management[6] stated, in relevant part, as follows:

> As requested, I am providing you with a written summary of the PBGC issue I brought up during the meeting we had Monday with Angela and Drew. I also have a few other concerns that I want to make you aware of at this time. I'm sure you will agree that in my role as a co-fiduciary of the Pension Plan, I have an obligation to lay everything out on the table so we can address and attempt to resolve these areas of concern, not only to protect the Plan participant's best interests and reduce the Company's potential exposure, but also to minimize the very real risk of any personal liability being incurred by Board members and the Plan's fiduciaries.
>
> As I mentioned in our meeting, as a result of the Plan's underfunded condition, the PBGC is closely monitoring the Plan's status and the Company's financial condition. I have been the PBGC's primary contact person here at Trans-Lux and have dealt extensively with them in response to their growing and increasingly aggressive requests for information. In fact, just recently the PBGC requested a 2010 year-end asset report, which they followed up with several in-depth questions. One area they probed were [sic] the Trans-Lux bonds and their substantial loss of value in 2010. While I deflected this inquiry for the moment, this can obviously be viewed as a potential conflict of interest on our part. When we have inside knowledge of the Company's financial situation and yet continue to hold on to these bonds, the PBGC is going to ask if we are really looking out for the best interests of the Plan's participants. I believe Angela made some very good points in our defense, but this is an area that the PBGC has twice raised with me in the last two weeks alone. I've voiced my concern about this

---

[6] A copy of Plaintiff's email to internal management is attached hereto as Exhibit C. The Complaint specifically references the email at paragraph 26. Again, under the Federal Rules, it is widely recognized that when a plaintiff references, but does not attach, certain documents in the complaint that are central to the plaintiff's claim, the Court may consider the documents for purposes of a Rule 12(b)(6) motion to dismiss without conversion to summary judgment under Rule 56. See supra note 1.

many times, especially in light of the Company's worsening financial condition, but no steps have ever been taken.

Another area that could potentially expose the Company and put Angela and myself at increased risk of personal liability as co-fiduciaries of the Plan is the status of the Pension Plan Committee make-up. Since Mike Mulcahy's retirement in January of 2010, Angela and I have been the only members left serving on this Committee. The Plan Document, however, makes it clear that the Committee must have a minimum of three members. … Here, the issue is whether or not decisions made by a two-member Pension Plan Committee are valid and binding. And if not, what is the exposure to the Company in this area?

Something else that concerns me that I didn't bring up at our meeting is that I just learned on January 28th of this year that the 2009 Amendment freezing salary under the Plan was never brought before the Board of Directors for approval. Even more concerning, this particular Amendment, unlike all previous amendments, was never filed with the Securities & Exchange Commission. With the recent filing for a Determination Letter, I am concerned as both a beneficiary and a fiduciary of the Plan that this may come to light and possibly invalidate the amendment.

Given the increased scrutiny by the PBGC, I am concerned that any one of these issues could trigger a full-blown investigation, not only by the PBGC but also by the IRS and/or Department of Labor after a review of our recently filed Determination Letter, or even by the auditors, who will be coming in again in a few months to conduct their next audit.

Everything I've learned leads me to conclude that I have a fiduciary responsibility to bring this information to your attention before any of the aforementioned organizations move against the Company or the Board. After thinking this over more, I think we have to meet again and take immediate steps to resolve some of these issues.

Plaintiff's email to the Audit Committee[7] similarly stated, in relevant part, as

follows:

I am taking the unusual step of writing the Audit Committee because of the recent increased scrutiny by the Pension Benefit Guaranty Corporation (PBGC), combined with my own very real concerns about the way the Plan is being managed.
…

---

[7]A copy of Plaintiff's email to the Audit Committee is attached hereto as Exhibit D. The Complaint specifically references the email at paragraph 26.

Another area that could potentially expose the Company and put Angela Toppi and myself at increased risk of personal liability at [sic] co-fiduciaries of the Plan is the status of the Pension Plan Committee make-up. Since Mike Mulcahy's retirement in January of 2010, Angela and I have been the only members left serving on the Pension Plan Committee. The Plan Document, however, makes it clear that the Committee must have a minimum of three members, and although I've brought this matter up on numerous occasions and even suggested the names of individuals who could be brought on to serve as Committee members, no action has ever been taken. This leads me to question whether or not decisions made by a two-member Pension Plan Committee are, valid and binding. If not, what is the exposure to the Company?

In addition, I just learned on January 28th of this year that the 2009 Amendment freezing salary under the Plan was never brought before the Board of Directors for approval. Even more concerning to me, this particular Plan Amendment, unlike all previous amendments, was never filed with the Securities and Exchange Commission.

I am concerned that any one of these issues could trigger an investigation by either 1) the IRS or the Department of Labor as a result of our recently filed Determination Letter; 2) the PBGC; and/or 3) the auditors, who will be coming in again in a few months to conduct their next audit. …

Nowhere in Plaintiff's internal emails did he mention that Trans-Lux's conduct might violate the securities laws. Instead, he very clearly expressed his concerns regarding whether the 2009 Amendment would be valid and enforceable and whether he could be personally liable as an alleged co-fiduciary of the Plan. Furthermore, as alleged in Plaintiff's complaint, he simply notified the SEC about Trans-Lux's alleged Plan compliance issues. (Compl. ¶ 27.) Such communications do not constitute protected activity under the DFA, because Plaintiff did not raise issues regarding a violation of the securities laws.

Although the nature of plaintiffs' communications necessary to invoke the protection of the DFA is a matter of first impression, courts and administrative agencies have interpreted similar language under SOX[8] to require that employees' communications

---

[8] The DFA protects individuals who provide information to the SEC "relating to a violation of

"definitively and specifically" relate to any of the categories of fraud or securities violations listed in SOX. See, e.g., Platone v. FLYi, Inc., 04-154, 2006 DOLSOX LEXIS 105 (ARB Sept. 29, 2006) ("[U]nder the SOX, the employee's communications must 'definitively and specifically' relate to any of the listed categories of fraud or securities violations under 18 U.S.C.A. § 1514A(a)(1)."); Joy v. Robbins & Myers, Inc., 08-049, 2009 DOLSOX LEXIS 82 (ARB Oct. 29, 2009) ("The record supports the ALJ's finding that Joy did not provide information that definitively and specifically related to the fraud statutes, an SEC rule or regulation, or shareholder fraud."); Grant v. Dominion East Ohio Gas, 2004-SOX-00063, 2005 DOLSOX LEXIS 79 at *124 (ALJ Mar. 10, 2005) ("[A]n employer's 'retaliation' or 'discrimination' is only a violation under [SOX] if it is in response to that employee's reasonable and **articulated** belief of fraud related to shareholders or a violation of one of the statutes enumerated in the Act." (emphasis added)). "The normal rule of statutory construction is that, if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection, 474 U.S. 494, 501, 106 S. Ct. 755 (1986). Consequently, Congress likely intended that the DFA protect only employees' communications that "definitively and specifically" relate to a violation of the securities laws. As none of Plaintiff's communications indicated that Trans-Lux's actions violated the securities laws, they did not constitute protected activity under the DFA. See, e.g., Vodopia v. Koninklijke Philips Elecs., 2010 U.S. App. LEXIS 22081 (2d Cir. Oct. 25, 2010) (holding that communications relating to alleged fraud on the Patent Office and the potential invalidity of certain patents as a result were not protected activity under SOX,

---

the securities laws." 15 U.S.C. § 78u-6(a)(6). SOX, in turn, protects employees who reasonably believe certain conduct "constitutes a violation" of certain, enumerated federal laws relating to fraud against shareholders. 18 U.S.C. § 1514A.

because they did not allege potential securities fraud, but only patent-related malfeasance); Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310 (S.D.N.Y. 2006) (dismissing in part SOX claim where plaintiff's complaints to management were "barren of any allegations of conduct that would alert Defendants that Fraser believed the company was violating any federal rule or law related to fraud on shareholders"), aff'd, 2010 U.S. App. LEXIS 21214 (Oct. 14, 2010).

Moreover, Trans-Lux actually filed a Form 10-K/A with the SEC on April 30, 2009, the date of the 2009 Amendment, which explicitly disclosed that "as of April 30, 2009, the benefit under the pension plan has been frozen, and, accordingly, there is no further increase in benefit being accrued," a fact of which the Court may take judicial notice.[9] Furthermore, the PBGC was already monitoring the Plan's status and the Company's financial condition. (See Exhibits C & D.) As such, treating Plaintiff's emails and letter to the SEC as protected activity would not even further the purposes of the DFA.[10] As Plaintiff did not provide the SEC with information relating to a violation of the securities laws, Count II of his Complaint should be dismissed as a matter of law.

---

[9] See In re Bayer Corp. Combination Aspirin Prods. Mktg. Pracs. Litig., 701 F. Supp. 2d 356, 367 (S.D.N.Y. 2010) (on a motion to dismiss, a court may take judicial notice of "facts 'not subject to reasonable dispute' [that are] 'generally known' or 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'") (citation omitted). A search of "Trans Lux" on the SEC's EDGAR website confirms the fact that Trans-Lux filed a Form 10-K/A with the SEC on April 30, 2009 discussing the 2009 Plan Amendment. See http://www.sec.gov/Archives/edgar/data/99106/000009910609000014/tlx10k08a2.txt.

[10] The situation present here differs dramatically from that present in Egan. In Egan, the plaintiff alleged that the company's CEO was diverting corporate assets to his own company. By concealing the financial malfeasance and making false representations about the company's stock incentive programs, he alleged, the defendants committed securities fraud. Egan, 2011 U.S. Dist. LEXIS 47713.

     **c.**    **Plaintiff did not engage in protected activity when he sent a letter to the SEC, because Plaintiff did not provide information to the SEC in a manner established by the SEC.**

The DFA does not protect individuals, like Plaintiff, who simply send a letter to the SEC; it only protects those individuals who provide information to the SEC **in a manner established by the SEC**. 15 U.S.C. § 78u-6(a)(6). The SEC's Final Rules provide, in relevant part, "You are a whistleblower if … you provide the Commission with information pursuant to the procedures set forth in § 240.21F-9(a) of this chapter …." 17 C.F.R. § 240.21-F-2(a). Section 240.21F-9(a), in turn, provides in relevant part, "To be considered a whistleblower under the [DFA], you must submit your information by either of these methods: (1) Online, through the Commission's website …; or (2) By mailing or faxing a Form TCR (Tip, Complaint or Referral) … to the SEC Office of the Whistleblower ...." For purposes of the anti-retaliation protections of the DFA, the Final Rules further state that a whistleblower is an individual who provides information to the SEC "in a manner described in Section 21F(h)(1)(A)," the statutory provision itself. 17 C.F.R. § 240.21-F-2(b)(ii). The Final Rules provide further, "The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award." 17 C.F.R. § 240.21-F-2(b)(iii). The SEC misconstrued the DFA.

As a preliminary matter, the statute itself contains only one definition of "whistleblower," not two different definitions depending upon the purpose for which the term is being used. To interpret the term otherwise would conflict with "the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Gustafson v. Alloyd Co., 513 U.S. 561, 570, 115 S. Ct. 1061 (1995).

Moreover, had Congress intended there to be two definitions of whistleblower in the statute, it could have included a different definition in the DFA award program than it did in

the anti-retaliation provision. It simply did not. By including only one definition of "whistleblower" in the statute, Congress indicated its intent to have only one definition of the term apply to both provisions. Germain, 503 U.S. at 253-54 ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); Ratzlaf v. United States, 510 U.S. 135, 143, 114 S. Ct. 655 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."), superseded by statute on other grounds. Furthermore, agencies should not add language that Congress has not included. To do so would amount to an enlargement of the statute, not the construction of it. See Lamie v. United States Trustee, 540 U.S. 526, 537, 124 S. Ct. 1023 (2004) (courts should not add an "absent word" to a statute; "'there is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted'" (citation omitted)).

Furthermore, the statute also states that the whistleblower must provide information to the SEC "in a manner established, by rule or regulation, by the Commission." Therefore, the SEC was required to establish a procedure for providing information to the SEC. The only procedure it established was through Form TCR, which must be submitted by mail, fax or on the internet. 17 C.F.R. § 240.21F-9(a). Plaintiff failed to follow this procedure. Consequently, the letter Plaintiff sent to the SEC was not protected activity under the DFA, and Count II of Plaintiff's Complaint should be dismissed as a matter of law.

2.   **Plaintiff Did Not Make "Disclosures That Are Required Or Protected" Under SOX, The Exchange Act, Or 18 U.S.C. § 513(e).**

Section 922(h)(1)A)(iii) of the DFA does not protect whistleblowers who report violations of any laws or regulations subject to the SEC's jurisdiction. Instead, it protects

"**disclosures that are required or protected** under [SOX, the Exchange Act, 18 U.S.C. § 1513(e)], and any other law, rule, or regulation subject to the jurisdiction of the Commission." 15 U.S.C. § 78u-6(h)(1)(A)(iii) (emphasis added). The DFA's whistleblower provision does not protect Plaintiff from retaliation because he did not make any "disclosures that are required or protected" under SOX, the Exchange Act or 18 U.S.C. § 513(e). Merely alleging the violation of a law or rule under the SEC's purview, like Plaintiff has done here, is not enough; a plaintiff must allege that a law or rule in the SEC's jurisdiction explicitly requires or protects disclosure of that violation. The DFA protects whistleblowers who fulfill an existing duty to disclose; it does not protect those who report violations of SEC laws or regulations that do not impose such a duty. Here, Plaintiff fails to cite to any provision of SOX[11], the Exchange Act, or 18 U.S.C. § 513(e)[12] that requires Trans-Lux to comply with the terms of its Pension Plan or to file a plan amendment with the SEC, or that protects someone who does so. These statutes simply do not impose such a duty. Any duty that Trans-Lux may have to comply with its Plan's terms arises

---

[11]Furthermore, a whistleblower claiming coverage under 15 U.S.C. § 78u-6(h)(1)(A)(iii) for disclosures protected by SOX must comply with the latter's requirement of exhausting administrative remedies by filing a complaint with the Secretary of Labor before bringing an action under the DFA. 18 U.S.C. § 1514A(b)(1)(B). Plaintiff has not done so, and tries to use the anti-retaliation provisions contained within the DFA to obviate that statutory requirement. The DFA does not allow him to do so.

[12]18 U.S.C. § 1513(e) provides, "Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any **Federal offense**, shall be fined under this title or imprisoned not more than 10 years, or both." Id. (emphasis added). Nowhere in Plaintiff's Complaint, however, does he allege that Defendants engaged in any criminal activity. Instead, he simply alleges that Trans-Lux failed to amend its Pension Plan in compliance with Plan procedures and to file the amendment with the SEC. These allegations are insufficient to support a claim under 18 U.S.C. § 1513(e). Vuyyuru v. Jadhav, 2011 U.S. Dist. LEXIS 42254 (E.D. Va. Apr. 19, 2011) (to prove a § 1513 violation, plaintiffs must show they reported information regarding a federal crime); United States v. Blitch, 2008 U.S. Dist. LEXIS 100998 (M.D. Ga. Dec. 15, 2008) ("The statute is intended to protect from retaliation the private citizen who comes forward to provide law enforcement with information about a federal crime ….").

under ERISA, a statute that is not covered by the DFA.

      Moreover, the "disclosures" protected by the DFA are disclosures that public companies are required to make to the SEC, such as Form 10Ks and 10Qs that corporate officers make on a quarterly or annual basis. Nowhere in his Complaint, however, does Plaintiff allege that he was even responsible for making such disclosures, let alone that he actually did so. Instead, he simply alleges that he sent a letter to the SEC regarding Trans-Lux's alleged plan compliance issues. (Compl. ¶ 26.) "Disclosures" cannot mean simply providing information to the SEC, however. Had that been Congress' intent, it could simply have used the words "providing information," like it did in Sections 922(a)(6) and 922(h)(1)(A)(i). It did not. Where Congress uses two terms, it is presumed that it "intended each term to have a particular, nonsuperfluous meaning." Bailey v. United States, 516 U.S. 137, 146, 116 S. Ct. 501 (1995), superseded by statute on other grounds. Here, Congress chose the term "disclosures," which has a specific meaning in the context of securities law, within which the DFA intends to protect investors. Black's Law Dictionary defines the term "disclosure" in the context of securities law as "the revealing of certain financial and other information believed relevant to investors considering buying securities in some venture; the requirement that sufficient information be provided prospective investors so that they can make an intelligent evaluation of a security." Black's Law Dictionary 320 (6th ed. 1991). As Plaintiff failed to make any disclosures as that term is generally understood in the context of securities law, his actions are not protected by the DFA, and Count II of Plaintiff's Complaint should be dismissed as a matter of law.

    **C.**    **The Court should strike, with prejudice, Plaintiff's claims for compensatory and punitive damages or any other relief in excess of those provided by ERISA and the DFA.**

      In the Prayer for Relief, Plaintiff seeks, among other forms of relief,

"compensatory damages, punitive damages, … equitable relief (including reinstatement, promotion, lost benefits and other appropriate affirmative action), injunctive relief, and any other relief this Honorable Court deems just and proper to award." (Compl., p.9.) With respect to his DFA claim, Plaintiff also claims he is "entitled to such legal and equitable relief to effectuate the purposes of the [DFA], including, inter alia, … frontpay, [and] compensatory damages." (Id. ¶ 50.) His claims for relief should be stricken with respect to both Counts of the Complaint, because neither ERISA nor the DFA provides for compensatory or punitive damages and the DFA does not provide for front pay or any other damages not explicitly provided for by statute.

It is well-settled that Congress did not provide for compensatory or punitive damages under ERISA. See, e.g., Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S. Ct. 2063 (1993); Gerosa v. Savasta & Co., 329 F.3d 317, 321 (2d Cir. 2003). As these cases establish, Plaintiff is not entitled to compensatory or punitive damages or any other relief in excess of the equitable remedies provided by ERISA. Accordingly, Plaintiff's claims for any such relief with respect to Count I should be stricken from this case, with prejudice.

Relief under the DFA's whistleblower retaliation provision, in turn, is limited to reinstatement, two times backpay, with interest, and "compensation for litigation costs, expert witness fees, and reasonable attorneys' fees." 15 U.S.C. § 78u-6(h)(1)(C). The DFA does not provide for compensatory damages, punitive damages, equitable relief other than reinstatement, injunctive relief, front pay, or any other relief not specifically enumerated in the statute. As such, these claims for relief should be stricken from Count II, with prejudice.

**D.      Plaintiff's Demand for a Trial by Jury With Respect to Count I (ERISA Section 510 retaliation) Should be Dismissed as Jury Trials Are Unavailable for Matters Subject to ERISA as a Matter of Law.**

All the Circuit Courts of Appeal that have addressed the issue, including the

Second Circuit Court of Appeals, have unanimously held that actions under ERISA for any relief provided therein are for the court, not a jury. Tischmann v. ITT/Sheraton Corp., 145 F.3d 561 (2d Cir. 1998); Adams v. Cyprus Amax Miners Co., 149 F.3d 1156 (10th Cir. 1998); Bittinger v. Tecumseh Products Co., 123 F.3d 877 (6th Cir. 1997); Kirk v. Provident Life & Accident Ins. Co., 942 F.2d 504, 506 (8th Cir. 1991); Sheet Metal Workers v. Keystone Heating & Air Conditioning, 934 F.2d 35 (3rd Cir. 1991); Conners v. Ryan's Coal Co., 923 F.2d 1461 (D.C. Cir. 1991); Blake v. Union-Mutual Stock Life Insurance Co. of America, 906 F.2d 1525 (11th Cir. 1990); Nevill v. Shell Oil Co. 835 F.2d 209 (9th Cir. 1987); Wardle v. Central States, Southeast and Southwest Areas Pension Fund, 627 F.2d 820 (7th Cir. 1980); Calamia v. Spivey, 632 F.2d 1235 (5th Cir. 1980). Accordingly, Plaintiff's demand for a jury trial with respect to Count I should be stricken from this case, with prejudice.

## III.   **CONCLUSION**

Count II of Plaintiff's Complaint must be dismissed. Count II fails to state a plausible claim for relief under the DFA, because (1) Plaintiff is not a "whistleblower" as that term is defined by the DFA, because he did not provide any information to the SEC in the manner established by the SEC relating to a violation of the securities laws, and (2) he did not make any "disclosures" to the SEC that are required or protected by SOX, the Exchange Act or 18 U.S.C. § 1513(e). The whistleblower retaliation provisions of the DFA simply do not apply to the type of communications Plaintiff alleges in his Complaint.

Further, the Court should strike, with prejudice, Plaintiff's demand for relief to the extent that he seeks compensatory and punitive damages or any other relief in excess of the relief provided by ERISA and the DFA. Such damages are unavailable, as a matter of law, for claims subject to ERISA and the DFA.

Finally, this Court should strike Plaintiff's demand for a jury trial with respect to Count I. ERISA simply does not provide a right to a jury trial.

DEFENDANT,
TRANS-LUX CORPORATION


By: /s/ Sarah C. Baskin
David R. Jimenez (ct 27357)
jimenezd@jacksonlewis.com
Sarah C. Baskin (ct 13570)
baskins@jacksonlewis.com
Cristina Madry (ct 28063)
madryc@jacksonlewis.com
Jackson Lewis LLP
90 Statehouse Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on November 10, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Sarah C. Baskin*
Sarah C. Baskin

4830-3900-1869, v. 5