UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD KRAMER,<br>    Plaintiff,<br><br>    v.<br><br>TRANS-LUX CORP.,<br>    Defendant. | No. 3:11cv1424 (SRU) |

## RULING ON MOTION TO DISMISS

This case is brought by a corporate employee who was fired after informing his company's board of directors and the U.S. Securities and Exchange Commission ("SEC") that his supervisors were violating the company's pension plan. The plaintiff, Richard Kramer, originally brought claims against Trans-Lux Corporation ("Trans-Lux") and Jean Marc Allain under the Employment Retirement Income Security Act ("ERISA") and the Dodd-Frank Act. Trans-Lux and Allain filed a motion to dismiss in November 2011, and a motion hearing was held on February 10, 2012. During that hearing, I granted the defendants' motion to the extent that it sought to strike the ERISA jury claim and to limit the ERISA claim to equitable relief. In all other respects the motion to dismiss was taken under advisement.

After the hearing, Kramer filed an amended complaint that dropped Allain as a defendant and added claims under the Age Discrimination in Employment Act. Except where the issues have become moot, I will treat the motion to dismiss the complaint as a motion to dismiss the amended complaint.

For the reasons that follow, Trans-Lux's motion to dismiss, doc. 16, is denied in part and granted in part. Allain's motion to dismiss, doc. 18, is denied as moot.

- 1 -

### I. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

**II.     Background**[1]

Kramer began working for Trans-Lux in 1981. Amend. Compl. at ¶ 9. For the past eighteen years, Kramer has served as Trans-Lux's Vice President of Human Resources and Administration. *Id.* As part of that position, Kramer was responsible for:

> [M]anaging Trans-Lux's relationship with the Pension Benefits Guaranty Corporation's (PBGC) oversight of the Trans-Lux ERISA governed Pension Plan, ensuring company compliance with all federal and state laws and regulations and serving as plan sponsor/administrator on all benefit plans, and serving as fiduciary for Trans-Lux's Defined Benefit and Defined Contributions plans.

*Id.* at 10. Kramer was supervised by Angela Toppi, Trans-Lux's Chief Financial Officer, and Allain, Trans-Lux's Chief Executive Officer. *Id.* at ¶¶ 11-12.

Kramer and Toppi were both members of Trans-Lux's pension plan committee. *Id.* at ¶ 13. Although Trans-Lux's pension plan requires the pension plan committee to be comprised of at least three members, since 2009 the committee has only had two members. *Id.* Kramer repeatedly advised Toppi that the committee needed at least one additional member, but Toppi rejected Kramer's advice. *Id.* at 14.

In addition to serving on the pension plan committee, Toppi served as the sole trustee of Trans-Lux's pension plan. *Id.* at ¶ 15. Kramer believed that Toppi's position as a trustee created a conflict of interest, and reported his concerns to Trans-Lux. *Id.* at ¶ 16. Specifically, Kramer was concerned that Toppi had inside knowledge of Trans-Lux's financial situation, and continued to hold company bonds as a pension investment, even as those bonds lost almost all of their value. *Id.* at ¶ 23. Again, Kramer's concerns were rejected. *Id.* at ¶ 16.

In December 2008, March 2009, September 2010, and January 2011, Trans-Lux amended its pension plan. *Id.* at ¶ 17. The Trans-Lux pension plan requires amendments to be made

---

[1] Unless otherwise noted, all facts are drawn from the amended complaint.

- 3 -

pursuant to the recommendation of a three-person committee, but the 2010 and 2011 amendments were instead made at the recommendation of a two-person committee. *Id.* Toppi was also required to bring the 2009 amendments to the board of directors for approval, and failed to do so. *Id.* at ¶ 18. Toppi also failed to file the 2009 amendments with the SEC. *Id.* at ¶ 19.

In March 2011, Toppi ordered Kramer not to file a Form 10 with the PBGC. *Id.* at ¶ 21. The form would have notified the PBGC that there had been a missed contribution, and would have subjected Trans-Lux to an immediate penalty. *Id.*

On March 22, 2011, Kramer sent an email to Allain, Toppi, and Drew Aldrich, reporting his concerns with Trans-Lux's failure to adhere to its pension plan. *Id.* at ¶ 22. Kramer expressed concern that: (1) Toppi was serving as the sole trustee; (2) the pension plan committee was only comprised of two people; and (3) the 2009 amendment, which had frozen salaries, had not been presented to the board of directors or filed with the SEC. *Id.* at ¶ 23. Again, Kramer's concerns were dismissed. *Id.* at ¶ 24.

On May 16, 2011, Kramer contacted Trans-Lux's board of director's audit committee about Trans-Lux's pension plan. *Id.* at ¶ 25. Again, Kramer expressed concern about Toppi's conflict of interest, the composition of the pension plan committee, and the failure to present the 2009 amendment to the appropriate bodies. *Id.* at ¶ 26. Shortly thereafter, Kramer sent a letter to the SEC about Trans-Lux's failure to submit the 2009 amendment to the board of directors or the SEC. *Id.* at ¶ 27.

A few hours after Kramer sent the email to the board of directors' audit committee, Allain and Aldrich began sending letters to Kramer, reprimanding him. *Id.* at ¶ 29. Two days later, one of Kramer's two underlings was reassigned to another manager. *Id.* at ¶ 30. A couple of days after that, Allain instructed Trans-Lux's in-house counsel to launch an investigation into

whether Kramer failed to report issues regarding employee garnishments and payroll problems to senior management. *Id.* at ¶ 31.

In May 2011, Allain began stripping Kramer of his responsibilities. *Id.* at ¶ 33. On July 11, 2011, Trans-Lux announced via email that July 22, 2011 would be the last day of employment for all human resources personnel, including Kramer. *Id.* at ¶ 53. Trans-Lux chose not to fire Kramer's remaining underling. *Id.*

### III. Discussion

Trans-Lux now moves (1) to dismiss the Dodd-Frank Act claim, and (2) to strike the prayer for relief to the extent it seeks damages in excess of those permitted by the Dodd-Frank Act.[2]

  A. Dodd-Frank Act Claim

   1. *Whether Kramer is a Whistleblower*

The Dodd-Frank Act provides protection against whistleblower retaliation:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower —
>
>> (i) in providing information to the Commission in accordance with this section;
>>
>> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>>
>> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002, the Securities Exchange Act of 1934, including section 10A(m) of such Act, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

---

[2] The motion to dismiss also sought to dismiss the ERISA and Dodd-Frank Act claims against Allain. The amended complaint has mooted those aspects of the motion.

15 U.S.C. § 78u-6(h)(1)(A) (emphasis added).

The Dodd-Frank Act defines a "whistleblower" as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."  15 U.S.C. § 78u-6(a)(6).

The parties disagree about how to reconcile the definition of "whistleblower" with the retaliation provision.  Trans-Lux argues that the retaliation provision applies only to those individuals who are both (a) a whistleblower under section 78u-6(a)(6), and (b) have engaged in one of the protected activities listed in section 78u-6(h)(1)(A).  Under this theory, Kramer would not be entitled to sue under the retaliation provision, because he has not provided information to the SEC in the manner required by the SEC, and is therefore not a "whistleblower."

Kramer argues that Trans-Lux's interpretation would effectively make section (iii) of the retaliation provision moot, because individuals who have engaged in the activity described in section (iii) are not, by definition, whistleblowers.  Kramer argues that those who make disclosures that are required or protected under Sarbanes-Oxley or the Securities Exchange Act of 1934 are clearly entitled to protection against whistleblower retaliation, even if those individuals do not otherwise fall under the definition of "whistleblower" found in section 78u-6(a)(6).

On August 12, 2011, the SEC promulgated a final rule attempting to clarify the interplay between section 78u-6(h)(1)(A), the retaliation provision, and section 78u-6(a)(6), the statutory definition of "whistleblower."  Before I can consider that rule, however, I must first determine whether the language of the Dodd-Frank Act is ambiguous.  *See Higgins v. Holder*, 677 F.3d 97, 102 (2d Cir. 2012) ("[W]e [first] consider *de novo* whether Congress has clearly spoken to the

question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (citing *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007)).

I do not believe it is unambiguously clear that the Dodd-Frank Act's retaliation provision only applies to those individuals who have provided information relating to a securities violation to the Commission, and have done so in a manner established by the Commission. Trans-Lux's interpretation would dramatically narrow the available protections available to potential whistleblowers. In order to have provided information in the manner provided by the SEC, an individual would have either had to submit the information online, through the Commission's website, or by mailing or faxing a Form TCR (Tip, Complaint or Referral). Mailing a regular letter is insufficient. 17 C.F.R. § 240.21F-9(a). Such a reading seems inconsistent with the goal of the Dodd-Frank Act, which was to "improve the accountability and transparency of the financial system," and create "new incentives and protections for whistleblowers." *Asadi v. GE Energy (USA), LLC*, Civil Action No. 4:12-345, 2012 WL 2522599, at *3 (S.D. Tex. June 28, 2012). Indeed, the only two courts to consider the matter have both held that the definition of "whistleblower" is broader with respect to the anti-retaliation section than it is for the rest of the statute. *Nollner v. S. Baptist Convention, Inc.*, 3:12cv40, 3:12cv43, 2012 WL 1108923 (M.D. Tenn. Apr. 3, 2012); *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202, 2011 WL 1672066 (S.D.N.Y. May 4, 2011).

I turn next, then, to the language of the SEC's rule:

For the purposes of the retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:

> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a

>   possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
>   (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

17 C.F.R. § 240.21F-2(b)(1).  "[T]he question for the court [in reviewing an agency interpretation] is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

Trans-Lux argues that the SEC's rule is an impermissible construction of the statute because it would allow potential plaintiffs to pursue under the Dodd-Frank Act retaliation claims they would have otherwise pursued under Sarbanes-Oxley.  This is problematic, Trans-Lux asserts, because the Dodd-Frank Act has a longer statute of limitations than Sarbanes-Oxley, and no exhaustion requirement.  Yet the Dodd-Frank Act appears to have been intended to expand upon the protections of Sarbanes-Oxley, and thus the claimed problem is no problem at all.

Indeed, even before the SEC's rule was published, one court had resolved the discrepancies between sections 78u-6(h)(1)(A) and 78u-6(a)(6) in an identical fashion:

>   The contradictory provisions of the Dodd-Frank Act are best harmonized by reading 15 U.S.C. § 78u6(h)(1)(A)(iii)'s protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to 15 U.S.C. § 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC.

*Egan*, at *5.  The SEC's rule is a permissible construction of the Dodd-Frank Act, and, accordingly, I must follow it.

   2.  *Whether Kramer's Letter Was Sent in Manner Established by SEC*

Trans-Lux next argues that Kramer was not engaging in protected activity when he sent a letter to the SEC, because he did not do so in a manner established by the SEC.  That argument cannot survive my ruling in Part III.A.1, above.  Section 78u-6(a)(6)'s requirement that the information at hand have been provided "in a manner established, by rule or regulation, to the

- 8 -

Commission" does not apply to section 78u-6(h)(1)(A). Instead, an individual must only allege that he possessed a "reasonable belief that the information" provided "relates to a possible securities law violation," and that he provided the information in a manner described in section 78u-6(h)(1)(A). 17 C.F.R. § 240.21F-2(b).[3]

    3. *Whether Kramer's Disclosures Related to the Violation of Securities Laws*

Trans-Lux next claims that Kramer's disclosures were not required by Sarbanes-Oxley, and thus not entitled to whistleblower protection. Kramer disclosed his concerns about the pension plan committee's actions at least three times: (1) in his email to Allain, (2) in his email to the audit committee, and (3) in his letter to the SEC. In his email to Allain, Kramer expressed concern that the pension's investment into Trans-Lux bonds, which subsequently lost value, could be viewed as a conflict of interest. Trans-Lux's Mot. to Dismiss, Ex. C. "When we have inside knowledge of the Company's financial situation and yet continue to hold on to these bonds, the PBGC is going to ask if we are really looking out for the best interests of the Plan's participants." *Id.* Kramer also expressed concern that he, Toppi, and Trans-Lux could be at risk for liability because the pension plan committee did not have the required three members. Finally, Kramer expressed concern that "the 2009 Amendment freezing salary under the Plan was never brought before the Board of Directors for approval." *Id.* "Even more concerning, this particular Amendment, unlike all previous amendments, was never filed with the Securities & Exchange Commission." *Id.* Kramer concluded,

> Given the increased scrutiny by the PBGC, I am concerned that any one of these issues could trigger a full-blown investigation, not only by the PBGC but also by

---

[3] In any event, an individual submitting original information in writing to the SEC after July 21, 2010 and before August 12, 2011 will be deemed to have satisfied the requirements of section 78u-6(h). 17 C.F.R. § 240.21F-9(d). Kramer submitted original information to the SEC in May 2011.

>the IRS and/or Department of Labor after a review of our recently filed Determination Letter, or even by the auditors, who will be coming in again in a few months to conduct their next audit.

*Id.*

In his email to the audit committee, Kramer noted that the pension plan was underfunded, and that the Trans-Lux bonds had lost a substantial amount of their value in 2010.  Trans-Lux's Mot. to Dismiss, Ex. D.  Kramer again expressed concern that the pension plan committee's decision to hold the bonds, despite knowing about the Company's financial situation, might constitute a conflict of interest.  He reiterated that the pension plan committee did not have the required number of members, and that he, Toppi, and Trans-Lux could be at risk of liability.  Kramer also noted that the pension committee had failed to submit the 2009 amendment, which froze salaries, to the board of directors or the SEC.  He concluded by stating that he was concerned the problems could trigger an investigation by the IRS, the Department of Labor, the auditors, or the PBGC.

Kramer's letter informed the SEC that Trans-Lux had failed to submit its 2009 amendment to the pension plan to its board of directors for approval and had failed to file its amendment with the SEC.  Kramer stated in his letter, "I feel an obligation to report a serious SEC filing violation that just recently came to my attention. . . . I would like you to investigate this violation on a confidential basis, if possible."  Letter from Richard Kramer to SEC (Feb. 11, 2011).

As noted above, subsection section 78u-6(h)(1)(A)(iii) protects "disclosures that are required or <u>protected</u> under the Sarbanes-Oxley Act of 2002, the Securities Exchange Act of 1934," and other rules or regulations that fall under the SEC's jurisdiction (emphasis added).

The language of this section indicates that disclosures that are protected under Sarbanes-Oxley's whistleblower provision are also protected under the Dodd-Frank Act's whistleblower provision.

Sarbanes-Oxley protects persons who disclose information they <u>reasonably believe</u> constitutes a violation of SEC rules or regulations, when the information is provided to, among others, "a person with supervisory authority over the employer (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(C). Kramer has alleged that Allain had supervisory authority over him, and the audit committee was a Trans-Lux entity that may have had the authority to investigate, discover, or terminate misconduct. Sarbanes-Oxley's whistleblower protections also extend to persons who disclose information to a federal regulatory agency. 18 U.S.C. § 1514A(a)(1)(A).

As Kramer has pointed out, in order to obtain the protections of section 1514A, the conduct at issue need not have <u>actually</u> constituted a violation of the SEC rules or regulations – by the language of the whistleblower provision, the whistleblower need only have reasonably believed that it was a violation. *Smith v. Corning Inc.*, 496 F. Supp. 2d 244, 248 (W.D.N.Y. 2007).

The language of the emails and letter in which Kramer raised his concerns demonstrates that he may have reasonably believed Trans-Lux to be committing violations of SEC rules or regulations. Trans-Lux's Mot. to Dismiss, Exs. C ("Even more concerning, this particular Amendment, unlike all previous amendments, was never filed with the Securities & Exchange Commission."), D (same); Letter from Richard Kramer to SEC (Feb. 11, 2011) ("I feel an obligation to report a serious SCE filing violation that just recently came to my attention."). Therefore, Kramer has alleged sufficient facts to support a Dodd-Frank Act whistleblower claim based on his internal and external communications.

4. *Whether Kramer's Disclosures Related to the Violation of Securities Laws*

Trans-Lux next argues that Kramer's disclosures were not protected because they did not pertain to the violation of securities laws. Section 240.21F-2(b)(1) states that, in order to be a whistleblower for retaliation purposes, an individual must "possess a <u>reasonable belief</u> that the information you are providing relates to a <u>possible</u> securities law violation" (emphasis added). As discussed above, Kramer has alleged sufficient facts to infer that he possessed a reasonable belief that he was reporting a possible securities law violation.[4] As such, Trans-Lux's motion to dismiss the Dodd-Frank Act claim is denied.

B. <u>Excess Damages</u>

Finally, Trans-Lux moves to strike Kramer's claim for compensatory and punitive damages under the Dodd-Frank Act.[5] The Dodd-Frank Act provides that relief under the retaliation provision includes "reinstatement;" "2 times the amount of back pay otherwise owed to the individual, with interest;" and "compensation for litigation costs, expert witness fees, and reasonable attorneys' fees." 15 U.S.C. § 78u-6(h)(1)(C). Kramer will be limited to that relief, and the motion to strike is granted to the extent it sought to limit Kramer's prayer for relief to damages permitted by ERISA and the Dodd Frank Act.

IV. **Conclusion**

---

[4] Trans-Lux argues that it actually filed a Form 10-K/A with the SEC on the date of the 2009 Amendment, and therefore there has been no violation. In order to qualify for whistleblower protection, however, Kramer need not demonstrate that there has been a violation, but only that he reasonably believed there had been such a violation. 17 C.F.R. § 240.21F-2(b)(1).

[5] During oral argument, Kramer conceded that he could not receive compensatory or punitive damages from Trans-Lux under ERISA. Accordingly, I granted Trans-Lux's motion with regard to the ERISA claim.

For the reasons stated above, **I deny** Trans-Lux's motion to dismiss, doc. 16.  Trans-Lux's motion to strike Kramer's prayer for relief, *id.*, is **granted in part.**  Allain's motion to dismiss, doc. 18, is **denied as moot**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 25th day of September 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge
